Slip Op. 23-180

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                    :
JING MEI AUTOMOTIVE (USA),          :
                                    :
            Plaintiff,              :
                                    :
        v.                          :        Before: Richard K. Eaton, Judge
                                    :
UNITED STATES,                      :        Court No. 13-00321
                                    :
            Defendant.              :
_____:

**<u>OPINION</u>**

[On classification of chrome-plated plastic automobile parts, Plaintiff's motion for summary judgment is granted in part and otherwise denied, and Defendant's cross-motion for summary judgment is granted in part and otherwise denied.]

Dated: December 18, 2023
Amended: February 26, 2024

*M. Jason Cunningham*, Sonnenberg & Cunningham PA, of Naples, FL, argued for Plaintiff Jing Mei Automotive (USA).

*Edward F. Kenny*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., argued for Defendant. With him on the brief were *Jeffrey Bossert Clark*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, *Justin R. Miller*, Attorney-In-Charge, International Trade Field Office, and *Aimee Lee*, Assistant Director. Of counsel were *Michael Heydrich*, Attorney Advisor, and *Edward N. Maurer*, Deputy Assistant Chief Counsel, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

Eaton, Judge: Plaintiff Jing Mei Automotive (USA) ("Plaintiff" or "Jing Mei") moves for

summary judgment pursuant to USCIT Rule 56 to determine the correct tariff duty classification

under the Harmonized Tariff Schedule of the United States ("HTSUS")[1] for chrome-plated plastic

automobile parts from the People's Republic of China ("China"). *See* 19 U.S.C. § 1202 (2018).

Defendant the United States, on behalf of U.S. Customs and Border Protection ("Customs"), cross-

moves for summary judgment. *See* Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Br."), ECF No. 55;

Def.'s Resp. Opp'n Pl.'s Mot. Summ. J. and Supp. Def.'s Cross-Mot. Summ. J. ("Def.'s Br."),

ECF No. 61; Pl.'s Resp. Opp'n Def.'s Cross-Mot. Summ. J. ("Pl.'s Resp."), ECF No. 65; Def.'s

Reply Supp. Def.'s Cross-Mot. Summ. J. ("Def.'s Reply"), ECF No. 68; Pl.'s Statement of

Material Facts Not in Dispute ("Pl.'s SOF"), ECF No. 55-7; Def.'s Resp. Pl.'s Statement of

Material Facts Not in Dispute ("Def.'s Resp. SOF"), ECF No. 61; Def.'s Statement of Material

Facts Not in Dispute ("Def.'s SOF"), ECF No. 61; Pl.'s Resp. Def.'s Statement of Material Facts

Not in Dispute ("Pl.'s Resp. SOF"), ECF No. 65-4.

This opinion concerns Jing Mei's challenge to most of Customs' classifications of the

imported merchandise under various provisions of HTSUS chapter 39, which generally covers

"[p]lastics and articles thereof," with duties imposed by Customs ranging from 2.5% to 6.5%, *ad

valorem*. Jing Mei seeks reliquidation under HTSUS chapter 87,[2] specifically heading 8708,

subheadings 8708.99.81.80 and 8708.70.60.45, both at 2.5% duty, *ad valorem*, plus interest.

Customs maintains that its classifications were correct.

Each article of imported merchandise falls into one of five categories: Category 1 (interior

trim), Category 2 (door handles and door handle parts), Category 3 (exterior trim), Category 4

---

[1]    All citations to the HTSUS refer to the 2012 edition. *See* Summons, ECF No. 1
(indicating that Plaintiff's merchandise was entered in 2011 and 2012). The pertinent tariff
provisions in the 2011 edition were unchanged in the 2012 edition.

[2]    Chapter 87 covers "[v]ehicles other than railway or tramway rolling-stock, and
parts and accessories thereof" and includes heading 8708 ("Parts and accessories of . . . motor
vehicles").

(mirror scalps), and Category 5 (emblems and axle covers). The parties have stipulated to the dismissal of Jing Mei's claims regarding the Category 4 (mirror scalps) articles and Category 5 (emblems) articles. *See* Joint Stipulation (Nov. 8, 2022), ECF No. 76 ¶¶ 6-7. Thus, Jing Mei's remaining claims pertain solely to the Category 1 (interior trim), Category 2 (door handles and door handle parts), Category 3 (exterior trim), and Category 5 (axle covers) articles.

For the reasons that follow, the court finds that the Category 1 (interior trim) articles and the Category 3 (exterior trim) articles are properly classified under HTSUS subheading 3926.30.50 ("Fittings for . . . coachwork . . . Other"); the Category 2 (door handles and door handle parts) articles are properly classified under HTSUS subheading 3926.30.10 ("Fittings for . . . coachwork . . . Handles and knobs"); and the Category 5 (axle covers) articles are properly classified under HTSUS subheading 8708.70.60.45 ("Wheel covers and hubcaps for vehicles").

Accordingly, Jing Mei's motion for summary judgment is granted, in part, and denied, in part, and Customs' cross-motion for summary judgment is granted, in part, and denied, in part.

## BACKGROUND

At issue here is the proper classification of entries of chrome-plated plastic automobile parts imported by Jing Mei from China between December 2011 and February 2012. *See* Summons, ECF No. 1. In its complaint, Jing Mei identified each of the imported articles as falling into one of five categories of chrome-plated plastic automobile parts: Category 1 (interior trim), Category 2 (door handles), Category 3 (exterior trim), Category 4 (mirror scalps), and Category 5 (emblems and axle covers). *See* First Am. Compl. ¶¶ 12-16, ECF No. 39; *see also* Def.'s SOF ¶¶ 1-33; Pl.'s Resp. SOF ¶¶ 1-33. According to Customs' response to Jing Mei's statement of material facts not in dispute:

> The parties agree that the articles within each of the five categories can be properly described as: [Category] (1) knobs, trim rings, bezels, and chicklets designed for the interior of specific makes and models of automobiles, [Category] (2) automotive handles that serve as door opening and locking devices for specific makes and models of motor vehicles, [Category] (3) is a chrome-plated plastic exterior automotive grill, [Category] (4) automotive mirror scalps designed for specific makes and models of automobiles, and [Category] (5) chrome-plated plastic automotive emblems and axle drive covers.

Def.'s Resp. SOF ¶ 8.[3] It is evident that the parties agree on what the parts are in all material respects. For ease of explanation the court will generally adopt Plaintiff's shorthand terminology.[4]

Jing Mei entered the subject parts under HTSUS chapter 87, heading 8708, subheading 8708.99.81 as "Parts and accessories of . . . motor vehicles . . . Other . . . Other."[5] *See* Def.'s Br. at 1. Customs, however, disagreed with Jing Mei's entered classification and instead classified most of the parts variously under HTSUS chapter 39 ("Plastics and articles thereof"). *Id.* at 1-2.

On February 22, 2013, Jing Mei filed a protest claiming the subject articles were classifiable as parts of motor vehicles in subheading 8708.99.81.80 and not in the subheadings of chapter 39 ("Plastics and articles thereof"). *See* Summons. Customs denied Jing Mei's protest, after which the company sued. Lengthy discovery followed.

---

[3]     Except for the Category 5 (axle covers) articles, which are an "aftermarket" part, the imported articles are manufactured as original equipment for a finished vehicle and are not intended for the aftermarket parts market. *See* Def.'s Br. at 40; Pl.'s Resp. at 1.

[4]     The exception is Category 2, for which the court will use "Category 2 (door handles and door handle parts)" as more descriptive.

[5]     Chapter 87 covers "[v]ehicles other than railway or tramway rolling-stock, and parts and accessories thereof." Ch. 87, HTSUS. The relevant portions of chapter 87 appear as follows:

8708    Parts and accessories of the motor vehicles of headings 8701 to 8705:
. . . .
        8708.99        Other
. . . .
                8708.99.81        Other

After oral argument, the parties submitted a joint stipulation dismissing Jing Mei's claims as to the Category 4 (mirror scalps) and Category 5 (emblems) articles. *See* Joint Stipulation ¶¶ 6-7. Therefore, classification of the Category 4 (mirror scalps) and Category 5 (emblems) articles is no longer at issue. The only remaining articles at issue are those of Category 1 (interior trim), Category 2 (door handles and door handle parts), Category 3 (exterior trim), and Category 5 (axle covers).

## JURISDICTION AND STANDARD OF REVIEW

The court has subject matter jurisdiction under 28 U.S.C. § 1581(a) and reviews Customs' classification determinations *de novo*. *See* 28 U.S.C. § 1581(a) (2018); *see also id.* § 2640(a)(1); *Telebrands Corp. v. United States*, 36 CIT 1231, 1234, 865 F. Supp. 2d 1277, 1279-80 (2012), *aff'd*, 522 F. App'x 915 (Fed. Cir. 2013).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." USCIT R. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "When both parties move for summary judgment, the court must evaluate each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." *JVC Co. of Am. v. United States*, 234 F.3d 1348, 1351 (Fed. Cir. 2000) (citing *McKay v. United States*, 199 F.3d 1376, 1380 (Fed. Cir. 1999)). In the context of a customs classification case, summary judgment is appropriate when there is no factual dispute as to the nature of the merchandise in question. *See Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006)**.**

## LEGAL FRAMEWORK

The objective in a classification case is to determine the correct tariff provision for the subject merchandise. *See Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984). While the court affords deference to Customs' classification rulings relative to their "power to persuade," it has "an independent responsibility to decide the legal issue of the proper meaning and scope of the HTSUS terms." *United States v. Mead Corp.*, 533 U.S. 218, 235 (2001) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)); *Warner-Lambert Co. v. United States*, 407 F.3d 1207, 1209 (Fed. Cir. 2005) (citation omitted)).

Classification decisions involve a two-step process by which the court first "ascertain[s] the meaning of the specific terms in the tariff provision" and then "determine[s] whether the goods come within the description of those terms." *Kahrs Int'l, Inc. v. United States*, 713 F.3d 640, 644 (Fed. Cir. 2013) (citation omitted). The first step is a question of law; the second is a question of fact. *Id.* If there is no factual dispute regarding what the merchandise is—as is the case here—"the resolution of the classification issue turns on the first step, determining the proper meaning and scope of the relevant tariff provisions," and the issue collapses entirely into a question of law ripe for summary judgment.[6] *Faus Grp., Inc. v. United States*, 581 F.3d 1369, 1372 (Fed. Cir. 2009) (first citing *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1378 (Fed. Cir. 1999); and then citing *Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365-66 (Fed. Cir. 1998)); *see Cummins*, 454 F.3d at 1363.

The General Rules of Interpretation ("GRI") and the Additional U.S. Rules of Interpretation govern classification of imported goods under the HTSUS. *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998). To determine the proper heading, most classification cases

---

[6] The parties do not dispute that the imported articles are chrome-plated parts, of plastic, for automobiles. Pl.'s SOF ¶ 12; Def.'s SOF ¶¶ 1-35.

do not require the court to go beyond GRI 1.[7] As to the selection of the proper heading, "in every case a product must first be classified to its appropriate [heading with] no account being taken of the terms of any lower-level subdivisions." *Better Home Plastics Corp. v. United States*, 20 CIT 221, 223, 916 F. Supp. 1265, 1267 (1996), *aff'd*, 119 F.3d 969 (Fed. Cir. 1997); s*ee also Telebrands Corp.*, 36 CIT at 1235, 865 F. Supp. 2d at 1280. If a good is not classifiable pursuant to GRI 1, and if the headings and notes do not require otherwise, then the other GRIs will be considered in numerical order. *See Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158, 1163 (Fed. Cir. 2017) ("The GRI apply in numerical order, meaning that subsequent rules are inapplicable if a preceding rule provides proper classification." (citation omitted)); *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011). In summary, a proper classification analysis starts with the terms of the headings, not the subheadings. *See Orlando Food*, 140 F.3d at 1440. In other words, a subheading cannot expand the plain meaning of the terms of a heading. *See Schlumberger Tech. Corp.*, 845 F.3d at 1163.

---

[7]      GRI 1 provides:

   The table of contents, alphabetical index, and titles of sections, chapters and sub-chapters are provided for ease of reference only; for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the [subsequent GRIs].

GRI 1, HTSUS.

Under GRI 1, the court determines the appropriate classification of merchandise "according to the terms of the headings[8] and any relative section or chapter notes." GRI 1, HTSUS.[9]

For aid in interpretation, a court may rely on its own understanding of any terms undefined in the HTSUS or consult other reliable information sources to ascertain the common meaning of such terms. *See Baxter Healthcare Corp. of P.R. v. United States*, 182 F.3d 1333, 1337-38 (Fed. Cir. 1999). In such interpretation, the HTSUS section and chapter notes "are not optional interpretive rules" but instead have the force of statutory law. *Aves. in Leather, Inc. v. United States*, 423 F.3d 1326, 1333 (Fed. Cir. 2005) (quoting *Park B. Smith, Ltd. v. United States*, 347 F.3d 922, 926 (Fed. Cir. 2003)). That is, the HTSUS section and chapter notes are legally binding. *See Home Depot U.S.A., Inc. v. United States*, 915 F.3d 1374, 1377 (Fed. Cir. 2019).

To determine the proper subheading, a court looks to GRI 6: "the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, *mutatis mutandis*, to [GRIs 1-5], on the understanding that only subheadings at the same level are comparable."[10] GRI 6, HTSUS.

---

8     "The first four digits of an HTSUS provision constitute the heading, whereas the remaining digits reflect subheadings." *Schlumberger Tech. Corp.*, 845 F.3d at 1163 n.4.

9     "[T]he terms of the headings and any relative Section or Chapter Notes are paramount, i.e., they are the first consideration in determining classification." *Telebrands Corp.*, 36 CIT at 1235, 865 F. Supp. 2d at 1280.

10     In full, GRI 6 provides:

For legal purposes, the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, *mutatis mutandis*, to the above rules, on the understanding that only subheadings at the same level are comparable. For the

In addition, "the court also may consider the Explanatory Notes to the Harmonized Commodity Description and Coding System [("HTS")], developed by the World Customs Organization." *Rubies Costume Co. v. United States*, 41 CIT __, __, 279 F. Supp. 3d 1145, 1154 (2017) (citation omitted), *aff'd*, 922 F.3d 1337 (Fed. Cir. 2019). The Explanatory Notes, unlike the section and chapter notes, are not legally binding or dispositive, but "may be consulted for guidance and are generally indicative of the proper interpretation of the various HTSUS provisions." *Aves. in Leather, Inc.*, 423 F.3d at 1334 (citing *JVC Co. of Am.*, 234 F.3d at 1352).

## DISCUSSION

At entry, Customs classified the Category 1 (interior trim), Category 2 (door handles and door handle parts), and Category 3 (exterior trim) articles under chapter 39 ("Plastics and articles thereof"), heading 3926 ("Other articles of plastics"). Additionally, Customs classified the Category 5 (axle covers) articles under chapter 39 ("Plastics and articles thereof"), heading 3923 ("Articles for the conveyance or packing of goods, of plastics; stoppers, lids, caps and other closures of plastics"). The specific subheadings employed were 3926.30.50[11] for the Category 1 (interior trim) and Category 3 (exterior trim) articles, 3926.30.10[12] for the Category 2 (door

---

purposes of this rule, the relative section, chapter and subchapter notes also apply, unless the context otherwise requires.

GRI 6, HTSUS.

[11]    HTSUS subheading 3926.30.50 covers: "Other articles of plastics . . . Fittings for . . . coachwork . . . Other."

[12]    HTSUS subheading 3926.30.10 covers: "Other articles of plastics . . . Fittings for . . . coachwork . . . Handles and knobs."

handles and door handle parts) articles, and 3923.50.00[13] for the Category 5 (axle covers) articles. *See* Def.'s Reply Br. at 2-3.

Jing Mei contests those classifications, arguing that all its entries should be classified within chapter 87 ("Vehicles other than railway or tramway rolling-stock, and parts and accessories thereof") in heading 8708 ("Parts and accessories of . . . motor vehicles"), subheading 8708.99.81.80 ("Other") and subheading 8708.70.60.45 ("Other"). Pl.'s Br. at 12, 36; Pl's Resp. at 19-20.

The nature of the merchandise is a question of fact, and the photographs and samples of the articles before the court act as a "potent witness" in that regard. *See Simod Am. Corp. v. United States*, 872 F.2d 1572, 1578 (Fed. Cir. 1989) ("[T]he merchandise itself is often a potent witness in classification cases."). The court has examined the articles and finds that they are a "potent witness" as to their respective classifications. *See, e.g.*, *id.*; *G.G. Marck & Assocs., Inc. v. United States*, No. 08-00306, 2015 WL 3757040, at *9 (CIT June 17, 2015) (not reported in Federal Supplement); *Janex Corp. v. United States*, 80 Cust. Ct. 146, 148 (1978) (not reported in Federal Supplement) ("[S]amples are potent witnesses and have great probative effect respecting the purpose for which an article is designed.") (citations omitted).

## I.    Category 1 (Interior Trim) Articles

The Category 1 (interior trim) articles consist of fourteen items of interior trim parts—

---

[13]        HTSUS subheading 3923.50.00 covers: "Stoppers, lids, caps and other closures."

knobs,[14] trim rings,[15] cupholder bezels,[16] and chicklets[17]—designed for the interior of specific makes and models of automobiles. All the Category 1 (interior trim) articles, in one way or another, are designed to fill or cover gaps or join separate interior surfaces of an automobile or eliminate rattle between parts and impart a decorative chrome finish. Def.'s SOF ¶¶ 1-14; Pl.'s Resp. SOF ¶¶ 1-14 (stating that each of the listed interior trim articles "includes the functions described").

---

[14]    The center chrome slide knob, outer chrome slide knob, and knob insert (center and outer) are small interior trim parts which function to (1) "fill in the surface gaps and join the separate surfaces of the air conditioning register vent tab (or knob)," and (2) "impart a decorative chrome trim which finishes the interior appearance of the cabin." Def.'s SOF ¶¶ 8-10. The knob insert additionally functions to "eliminate rattle between parts." *Id.* ¶ 8.

[15]    The chrome trim ring with tape and trim ring console shifter are small interior trim parts that function to (1) "cover the gap between PRNDL [Park Reverse Neutral Drive Low] shifter assembly and the surrounding console surface," (2) "eliminate rattles between PRNDL and surrounding cover," and (3) "impart a decorative appearance." Def.'s SOF ¶¶ 1, 3. The escut console is an interior trim part that functions to "fill in the surface gaps and join the separate surfaces between the center console knob and the surrounding center console surface." *Id.* ¶ 5. They, too, are intended to eliminate rattle between parts and provide a decorative chrome finish. *See id.*

[16]    The cupholder chrome bezel and QW cupholder are interior trim parts that function to (1) "cover otherwise exposed edges of adjacent components," (2) "provide a border element for the console's cupholder assembly," and (3) "impart a decorative finished appearance to the cabin interior." Def.'s SOF ¶¶ 11-12. Similarly, the TFP trim bezel chrome functions to "impart a decorative chrome plated border trim to the cup holder assembly which finishes the interior appearance." *Id.* ¶ 4. The shifter chrome bezel is an interior trim part that functions to "cover the gap between PRNDL [Park Reverse Neutral Drive Low] shifter assembly and the surrounding console surface," as well as to "eliminate rattles between PRNDL" and "impart a decorative appearance." *Id.* ¶ 2. While the description of the cupholder bezels does not include the words "cover a gap," examination of the articles reveals that they do cover gaps.

[17]    The outer chicklet insert and center chicklet insert are interior trim parts that function to (1) "fill in the surface gaps and join the separate surfaces of the air conditioning register vent tab (or knob)," (2) "eliminate rattle between parts," and (3) "impart a decorative chrome trim which finishes the interior appearance of the cabin." Def.'s SOF ¶¶ 6-7. The RHO trimplate and LHO trimplate are interior trim parts that serve the same function as the aforementioned "chicklets"; however, instead of "fill[ing] in the surface gaps and join[ing] the separate surfaces of the air conditioning register *vent tab (or knob)*," they "fill in the surface gaps and join the separate surfaces of the air conditioning *vent assembly* and the *surrounding dashboard*." *Id.* ¶¶ 13-14 (emphasis added).

The parties agree as to the articles' decorative aspects or functions, and courts have considered such decorative, or ornamental, or luxurious, or embellishing aspects to be distinct from practical functionality. *See, e.g.*, *Amcor Flexibles Kreuzlingen AG v. United States*, 46 CIT __, __, 560 F. Supp. 3d 1326, 1336 (2022).

Customs liquidated the Category 1 (interior trim) articles as articles of plastics under chapter 39 of section VII, subheading 3926.30.50 ("Other articles of plastics . . . Fittings for . . . coachwork . . . Other").

Plaintiff Jing Mei maintains that its Category 1 (interior trim) articles should be classified under heading 8708 as "[p]arts and accessories of . . . motor vehicles." *See* Pl.'s Br. at 18. On the other hand, Customs claims that the Category 1 (interior trim) articles cannot be classified under heading 8708 because they are "parts of general use" that are precluded from classification under heading 8708 by the application of note 2(b) to section XVII. *See* Def.'s Br. at 12-13. Section XVII's note 2(b) specifies:

> [T]he expressions "parts" and "parts and accessories" [found in heading 8708] do not apply to the following articles, whether or not they are identifiable as for the goods of this section [XVII ("Vehicles, aircraft, vessels and associated transport equipment")[18]]: . . . *Parts of general use*, as defined in note 2 to section XV [("Base metals and articles of base metal")] . . . or *similar goods of plastics* (chapter 39).

Section XVII, Note 2(b), HTSUS (emphasis added).

According to Customs, because Plaintiff's articles are "parts of general use," they cannot be "parts or accessories" of motor vehicles classifiable under heading 8708, as Jing Mei would wish. *See* Def.'s Br. at 15-30. This is because section XVII's note 2(b) covers all of chapter 87, including Jing Mei's preferred heading 8708. Put another way, to be classifiable under heading

---

[18]     Section XVII covers Jing Mei's preferred heading 8708 ("Parts and accessories of . . . motor vehicles").

8708, an article must be a specified "part" of a motor vehicle, but section XVII's note 2(b) directs that a "part of general use" cannot be classified as a motor vehicle "part."

The term "parts of general use" is defined in section XV's[19] note 2. As defined, this term includes "[a]rticles of heading . . . *8302* . . . ." Section XV, Note 2(c), HTSUS (emphasis added). Section XV's note 2(c) defines *as* "parts of general use" the base metal articles "of heading . . . 8302" and, in addition, section XVII's note 2(b) includes within that definition "*or similar goods of plastics*."

Heading 8302 provides for the classification of "[b]ase metal *mountings*, *fittings* and *similar articles* suitable for furniture, doors, staircases, windows, blinds, *coachwork*, saddlery, trunks, chests, caskets or the like . . . ." Heading 8302, HTSUS (emphasis added).

It is Customs' position that the Category 1 (interior trim) articles are "fittings" because they "function to fit, join, adjust, or adapt other parts together, and are also something used in *fitting up* an automobile: *i.e.* an [automobile] accessory, adjunct, or attachment." Def.'s Br. at 24 (emphasis added). Consequently, for Customs, the Category 1 (interior trim) articles are "fittings" of heading 8302. *See id.* at 28-30. Customs further argues that the "fittings" function as "similar goods" of plastics as those of the base metal fittings and mountings found under heading 8302 ("fittings," "mountings," or "similar articles"). *See* Def.'s Reply at 19 ("[I]t is the qualities of [the] plastic component of the parts at issue here, i.e., [their] light weight and strength[,] that made plastic auto parts so important to the auto industry."). Because section XVII's note 2(b) defines such articles as "[p]arts of general use," Customs contends that the Category 1 (interior trim) articles, by virtue of being "parts of general use," are precluded from classification under Jing Mei's preferred chapter 87 by section XVII's note 2(b). *Id.* at 4.

---

[19]        Section XV covers: "Base metals and articles of base metal."

In addition, Customs seems to say that the Category 1 (interior trim) articles are also "like" mountings of heading 8302. *See*, *e.g.*, Def.'s Br. at 22 ("The Category 1 Plastic Trim Products Are Like Fittings *And Mountings* For Coachwork of Heading 8302" (emphasis added)). While it does not elaborate on that claim, it is apparent that Customs' contention is that at least some of the Category 1 (interior trim) articles are mountings, and thus also would fall under heading 8302 because mountings, as "parts of general use," are excluded from classification under chapter 87. The court will consider this claim too.

For its part, Jing Mei responds: (1) that the Category 1 (interior trim) articles are properly classifiable under heading 8708 as "[p]arts and accessories of . . . motor vehicles . . ." and (2) that they cannot be "fittings" of the type described by heading 8302 because the Category 1 (interior trim) articles do not "fit" anything within the "plain" meaning of the term, and if they do not "fit" they cannot be fittings. *See* Pl.'s Br. at 19, 22. Jing Mei emphasizes that the Category 1 (interior trim) articles consist of knobs,[20] trim rings, cupholder bezels, chicklets and the like, and it claims that nothing in the record indicates that these articles function as fittings or as mountings. "They do not join or fit items together like a pipe fitting, and [although] they are 'mounted' into the vehicle, [they are] not a mounting or setting for another part of the vehicle." *See id.* at 23. Jing Mei further contends that articles included within the term "fittings" do not commonly or consistently include gap-filling or edge-joining articles. Pl.'s Resp. at 18. Therefore, Jing Mei reasons, Customs' argument that the articles are fittings of heading 8302—because they "fit" into spaces for which they are designed—is an argument that "goes too far." *Id.*

---

[20]    The "knobs" are not knobs as might be otherwise thought. They are small interior trim parts which function to (1) "fit onto and adjust the air conditioning register vents" and (2) "impart a decorative finished appearance to the cabin interior." *See* Def.'s SOF ¶¶ 9-10.

Similarly, Jing Mei contends that the Category 1 (interior trim) articles are not "mountings" of heading 8302 because "[t]hey do not serve the function of mounting, backing, supporting, or setting other parts." Pl.'s Br. at 19.

Jing Mei maintains that, because the Category 1 (interior trim) articles are neither fittings nor mountings, section XVII's note 2(b), precluding "[p]arts of general use" from classification under heading 8708, is inapplicable. *Id.* at 20-23.

At the outset of its arguments, Jing Mei addresses *Honda of America Manufacturing, Inc. v. United States*, 607 F.3d 771 (Fed. Cir. 2010), which provides relevant guidance for determining when imported automotive parts should be classified under HTSUS chapter 87 or are excluded therefrom as "parts of general use." *See* Pl.'s Br. at 13-19. The issue in *Honda* was the classification of imported hollow oil bolts used in cars and motorcycles. The bolts "connect[ed] fluid lines to brake master cylinders or transmission cases, allowing fluid to flow through [the bolt] without leaking." *Honda*, 607 F.3d at 772. Like the present case, *Honda* focused on whether the imported bolts were precluded from classification under chapter 87 ("Vehicles . . . and parts and accessories thereof") by operation of section XV's note 2(a) as "parts of general use." *Id.* at 772-73. Section XV's note 2(a) defines as "parts of general use" articles of heading 7318, which parallels section XV's note 2(c)'s definition of heading 8302 articles as "parts of general use," as relevant in this case. The Federal Circuit concluded that the bolts were not properly classifiable under heading 8708 as "[p]arts and accessories of . . . motor vehicles" and instead directed classification of the articles as screws or bolts under subheading 7318.15.80, an *eo nomine* provision for "[s]crews, bolts, . . . and similar articles, of iron or steel . . . [t]hreaded articles . . . [h]aving shanks or threads with a diameter of 6 mm or more." *Id.* at 772, 776.

The *Honda* Court reached this conclusion by agreeing with the lower court that when section XVII's note 2(b) comes into play, the "initial test" is to determine whether the "parts of general use" provision(s) cover the imported articles. *See id.* at 774; *see also Honda of Am. Mfg., Inc. v. United States*, 33 CIT 649, 652, 625 F. Supp. 2d 1324, 1327 (2009). In other words, it should first be determined if the articles are "parts of general use" and thus excluded from classification under chapter 87. *Honda*, 607 F.3d at 774 ("If the oil bolts are parts of general use, then they cannot fall under Honda's proposed subheadings."). The articles in *Honda* were colorably classifiable under both headings 8708 and 7318, *id.* at 773, but there was no dispute that the bolts had the characteristics of "parts of general use." *Id.* at 775. Ultimately, the Federal Circuit concluded that, because the imported bolts were "parts of general use," they were excluded from classification under chapter 87. *Id.* at 776.

Jing Mei seeks to distinguish *Honda* from its own case. First, it argues that Customs' preferred HTSUS chapter 39, covering the heading and subheadings for "articles of plastics," is subject to chapter 39's note 2(t).[21] *See* Pl.'s Resp. at 10. Chapter 39's note 2(t) specifically excludes from classification under chapter 39 "Parts of . . . *vehicles* of section XVII" ("Vehicles, aircraft, vessels and associated transport equipment"). Section XVII covers chapter 87 and heading 8708 ("Parts and accessories of . . . motor vehicles"). According to Jing Mei, because (1) the Category 1 (interior trim) articles are clearly parts of motor vehicles and (2) are not fittings or mountings, chapter 39's note 2(t) directs their classification under heading 8708:

> Importantly, a distinction between the GRI(1) analysis in <u>Honda</u> and the present case is that in "clarifying the relationship" between the competing provisions in the present case, the relationship is more clearly defined by note [2](t) of chapter 39 than it was in the <u>Honda</u> case. While HTSUS chapter 39's note [2](t) in the present case before the Court specifically excludes ["][p]arts of aircraft or

---

[21]   Note 2(t) provides: "This Chapter [chapter 39] does not cover . . . Parts of . . . vehicles of section XVII."

vehicles of section XVII," and sends them back to Chapter 87, <u>Honda's</u> competing provision . . . had no such similar exclusionary note to send the analysis back to Chapter 87.

. . . .

With the guidance provided by key judicial precedent[, *Honda*], this Court may apply a GRI(1) analysis by applying the limit terms "mounting" and "fitting" of HTSUS 8302 to articles within categories 1 through 4 in this case, which results in classification under HTSUS 8708.99.8180. In the present case, the additional exclusionary language of Chapter 39's note [2](t) to exclude automotive parts of Chapter 87; and the additional words of limitation that apply to HTSUS heading 8302's "mountings" and "fittings" favor classification of categories 1 to 4 of the subject articles because . . . they are (1) not fittings nor mountings within the plain meaning of those terms, (2) even if they were mountings or fittings, they are not "accessory" fittings or mountings to which the definition of "parts of general use["]is limited, and (3) they are not of the same class or kind of accessory fittings or mountings that qualify as "parts of general use" under an ejusdem generis analysis required by applicable precedent.

Pl.'s Br. at 15, 18-19. In other words, for Jing Mei, the application of chapter 39's exclusionary note 2(t), and the "limited" definition of fittings and mountings of heading 8302, in this instance result in classification under subheading 8708.99.81.80.[22]

Second, Jing Mei insists that in *Honda*, heading 7318 provided *eo nomine* for "bolts" and "screws" without limitation. For Jing Mei, heading 8302 (the heading that is defined by section XV's note 2(c) as "parts of general use"), in the present case, provides *eo nomine* for "mountings and fittings" *with* limitation, i.e., heading 8302 ("Base metal mountings, fittings and similar articles") must be "*suitable* for furniture, doors, staircases, windows, blinds, *coachwork*, saddlery, trunks, chests, caskets or the like." Pl.'s Br. at 15-16 (emphasis added).

---

[22]    As noted, section XVII provides for the classification of "[v]ehicles, aircraft, vessels and associated transport equipment" and covers chapter 87 ("Vehicles other than railway or tramway rolling-stock, and parts and accessories thereof"), which includes heading 8708 ("Parts and accessories of . . . motor vehicles").

In making its argument, Jing Mei draws attention to what it calls the "limitation" expressed in Explanatory Note[23] 83.02:

> This heading [8302 ("Base metal mountings, fittings and similar articles," etc.)] covers general purpose classes of base metal *accessory* fittings and mountings, such as are used largely on furniture, doors, windows, *coachwork*, etc. Goods within such general classes remain in this heading even if they are designed for particular uses (e.g., door handles or hinges for automobiles). *The heading **does not**, however, **extend** to goods forming an essential part of the structure* of the article, such as window frames or swivel devices for revolving chairs.

4 EXPLANATORY NOTES (World Customs Org. 4th ed. 2007) Note 83.02, HTS (emphasis added). The court observes that the "body" or coachwork of an automobile is the main supporting structure of the vehicle, to which all other components are attached. *See, e.g.*, Def.'s Br. at 24 ("[T]he term 'coachwork' refers to the design or work related to the body of an automobile."); *cf. id.* at 40 (asserting that the rear drive axle cover "fits on the axle end and not on the body of the vehicle").

According to Jing Mei, Explanatory Note 83.02 directs that heading 8302 only covers *accessory* fittings, and mountings, and since the Category 1 (interior trim) articles are not accessories, they are not properly classifiable under that heading. *See* Pl.'s Br. at 27. Jing Mei insists that because its articles consist of parts for automobiles, they cannot be considered mere "accessory" fittings of heading 8302:

> This is a peculiar oversight by [Customs to classifying its Category 1 (interior trim) articles] because, as an important side note, the term "accessory," as used in [Explanatory Note 83.02], . . . *further narrows* the interpretation of the terms, "mounting" and "fitting." [Customs'] own Informed Compliance Publication[24] . . . confirms that the 8302 EN further narrows the meaning of

---

[23]     Worth repeating here is that the Explanatory Notes (unlike the section and chapter notes) are not legally binding or dispositive, but "may be consulted for guidance and are generally indicative of the proper interpretation of the various HTSUS provisions." *Aves. in Leather*, 423 F.3d at 1334 (citation omitted).

[24]     *See* U.S. CUSTOMS & BORDER PROTECTION, WHAT EVERY MEMBER OF THE TRADE COMMUNITY SHOULD KNOW ABOUT: BASE METAL MOUNTINGS AND FITTINGS 12 (2010) ("In

> "mountings" and "fittings" under HTSUS 8302 that those terms are limited to *accessory* fittings and *accessory* mountings.

*Id.* at 26 (emphasis added). As noted, articles classifiable under heading 8302 as "parts of general use" are precluded from classification under heading 8708. Jing Mei maintains that heading 8302 is not intended to cover *all* "fittings" and "mountings" and "similar articles," but only those that are *accessory* fittings and mountings and similar articles, and it claims that its Category 1 (interior trim) articles are not such "accessory" articles. Rather, for Jing Mei the Category 1 (interior trim) articles form an essential part of the structure of a motor vehicle. *See id.* at 28 ("[The articles] function to reflect light for drivers in low light situations, to reduce rattling inside the vehicle, to protect drivers and passengers from sharp surfaces."). Thus, Jing Mei claims that heading 8302 does not describe its Category 1 (interior trim) articles made of plastic. *See id.* at 25-26.

To bolster its case, Jing Mei directs the court's attention to Customs' own Informed Compliance Publication on the subject that requires "fittings" of heading 8302 must have a "secondary, supplementary, or subordinate function," and it asserts that even if the Category 1 (interior trim) articles could be considered a *type* of fitting or mounting, they do not have a "secondary, supplementary, or subordinate function." *See id.* at 26.

Rather, Jing Mei argues, a proper GRI 1 analysis would classify the Category 1 (interior trim) articles as "[p]arts and accessories of . . . motor vehicles" under heading 8708, because the articles are obviously motor vehicle parts by application of the various notes and are not "parts of general use." *See id.* at 18.

---

addition, the term 'accessory,' (as used in EN 8302) narrows the interpretation of the terms, 'mounting' and 'fitting.' 'Accessory' is defined as 'having a secondary, supplementary, or subordinate function.' *American Heritage Dictionary,* 2nd College Edition, (1982). Therefore, articles covered by heading 8302 must not form an essential part of the structure of an article. Examples of articles that do not fall in heading 8302 are window and door frames and swivel devices for revolving chairs.").

For its part, Customs offers its own perspective:

Explanatory Note 83.02 is best discussed with an understanding of the meaning of the words "general purpose classes" in the phrase "general purpose classes of base metal accessory fittings and mountings. . ." The common meaning of the words "purpose," "general purpose" and "class" used in Explanatory Note 83.02 has been defined as follows:

- *Merriam-Webster Lerner's Dictionary* . . . defines the term "purpose" as "the reason why something is done or used: the aim or intention of something. able to be used for many purposes: not limited to a single purpose"[;]

- *Merriam-Webster Lerner's Dictionary* . . . defines the term "general-purpose" as "able to be used for many purposes: not limited to a single purpose"[;]

- *Merriam-Webster Lerner's Dictionary* . . . defines the term "class" as: 4 a: a group of people or things that are similar in some way. - Do you have a license to drive this class of vehicle? - a new class [=kind, type] of nuclear submarine[.]

As the above definitions show, the phrase "general purpose classes" means a group of articles with some commonality which have more than one purpose or reason for being used. The Category 1 parts meet the definition of general purpose classes of goods as they are in the class of goods collectively identified as "Interior Trim," as discussed above, and they each have more than one use, *i.e.* 1) provide decoration or ornamentation, and 2) they fit, join, adjust, or adapt other parts or edges together to achieve a finished appearance and 3) eliminate rattling sounds.

Additionally, Explanatory Note 83.02 further provides "[t]he heading [83.02, HTS] does not, however, extend to goods forming an essential part of the structure of the article, such as window frames or swivel devices for revolving chairs." [Jing Mei]'s interpretation of an "accessory" as having a secondary supplementary or subordinate function, comports with the Explanatory Note. Further, the Federal Circuit in analyzing the wording from this same Explanatory Note 83.02 . . . stated the following:

This provision draws a sharp distinction between "general purpose . . . accessory fittings and mountings," which fall within the scope of heading 8302 and "goods forming an essential part of the structure of [an] article," which do not.

Def.'s Br. at 27-28 (quoting *Container Store v. United States*, 864 F.3d 1326, 1331 (Fed. Cir. 2017)).

The court finds that Jing Mei's Category 1 (interior trim) articles are not classifiable under heading 8708 (as Jing Mei would wish). While an initial application of GRI 1's operative phrase "classification shall be determined according to the terms of the headings" would appear to direct classification of the articles under heading 8708 as "[p]arts and accessories of . . . motor vehicles" of section XVII, the second phrase of GRI 1 prohibits classification under that heading. The second phrase of GRI 1 adds that, in addition to "the terms of the headings," classification shall be in accordance with "any relative section or chapter notes." Customs is correct to cite and quote section XVII's[25] ("Vehicles, aircraft, vessels and associated transport equipment") note 2(b) which eliminates from the definition of "parts" found in heading 8708 (i.e., "*Parts* and accessories of . . . motor vehicles") those that are "parts of general use." It is also correct to cite section XV's ("Base metals and articles of base metal") note 2(c), which defines as "parts of general use" articles of heading 8302 (and including "similar goods of plastics" of chapter 39 pursuant to section XVII's note 2(b)). Thus, even though it may at first appear that heading 8708 covers all "parts" for motor vehicles, section XVII's note 2(b) acts as a limitation on just what "parts" of motor vehicles that heading covers by eliminating "parts of general use."

Jing Mei insists that the main point on which the *Honda* case is distinguishable from this case is that *Honda* did not involve an exclusionary note, like chapter 39's note 2(t). Jing Mei claims that chapter 39's note 2(t) prevents characterization of its Category 1 (interior trim) articles as "parts of general use." *See* Pl.'s Br. at 18-24; Pl.'s Resp. at 10.

As an initial matter, it is important to note that the *Honda* Court concluded that "an article's specialization for vehicles does not preclude its classification as a part of general use." *Honda*, 607 F.3d at 774. Thus, the fact that the Category 1 (interior trim) articles are designed for specific

---

[25]     As noted, section XVII covers Jing Mei's preferred heading 8708.

makes and models of automobiles does not prevent them from being "parts of general use." *See id.*

The court observes that articles classifiable under heading 8302 include "fittings," "mountings," or "similar articles"[26] (in this case similar fittings and mountings) that are "suitable for . . . coachwork"—that is, suitable for automobile bodies. The "suitability" of fittings and mountings and similar articles for coachwork implies their functionality (i.e., what their purpose is). The Category 1 (interior trim) articles were designed to be attached to coachwork and thus satisfy that portion of the definition.

Both parties cite many of the same dictionary definitions and prior Customs rulings relying on them to define the meaning of "fittings" and "mountings" under HTSUS heading 8302. Defendant summarizes those definitions of fittings as:

- *Webster's New World Dictionary*, Third College Edition, defining the term "fitting" as "a small part used to join, adjust, or adapt other parts, as in a system of pipes."

- In HQ 966001, dated October 14, 2003, [Customs] relied upon *Webster's Third New International Dictionary* [(unabridged, 1961)], which generally defines "fitting" as: ["]1 a. something used in fitting up : accessory, adjunct, attachment . . . b. a small often standardized part (as a coupling, valve, gauge)[."]
  . . . .
- "[F]itting" is "a small part used to join, adjust, or adapt other parts, as in a system of pipes 3. [pl.] *the fixtures, furnishings or decoration of* a house, office, *automobile*, etc." HQ W967544, dated June 24, 2005, HQ H025860, dated November 20, 2009, citing *Webster's New World Dictionary*, Second Edition, 1974.

---

[26]    The phrase "similar articles" connotes *ejusdem generis*, a doctrine that ascribes the essential characteristics or purposes that unite a listing of specifics (*seriatim*) to a "catch all" wording or phrase. *See Sports Graphics, Inc. v. United States*, 24 F.3d 1390, 1392 (Fed. Cir. 1994); *see also Ejusdem Generis*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining *ejusdem generis* as a "canon of construction holding that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed"). In this case, *ejusdem generis* implies overlap of functionality between heading 8302 fittings and heading 8302 mountings "and similar articles."

Def.'s Br. at 22-23 (emphasis added). These definitions confirm that, among other things, a "fitting" is a part, usually small, used to join, adjust, or adapt other parts, or is a part used in fitting up a house, office, or automobile, such as an appropriate accessory, attachment, furnishing or decoration.

Both parties also cite many of the same dictionary definitions and prior Customs rulings relying on them to define mountings, for example:

- In HQ 958784, dated May 17, 1996, [Customs] addressed the general meaning of the term, "mounting:" The term "mounting" ("mount") is broadly defined as a frame or support, such as, 'an undercarriage or part on which a device (as a motor or an artillery piece) rests in service,' or '*an attachment for an accessory*.' *Webster's Ninth New Collegiate Dictionary*, pg. 775-776 (1990).

- In HQ 966458, dated June 19, 2003, [Customs] further noted ["]The term 'mounting' is described as 'something serving as a backing, support, setting etc. See *Webster's New World Dictionary of the American Language*, 2nd Edition, p.931 (1974). In addition, *The American Heritage Dictionary* [(4th ed. 2000)] defines 'mounting' as '. . . something that serves as a support setting or backing: mounting for a gem . . . .'"

*Id.* at 23 (emphasis added). A "mounting" is thus "[s]omething that serves as a mount, support, or setting to anything," and also "[t]hat which is or may be mounted for use or ornament." 10 OXFORD ENGLISH DICTIONARY 17 (2d ed. 1989).[27] "Setting" means "[t]he manner or position in which anything is set, fixed, or placed." 15 OXFORD ENGLISH DICTIONARY 80 (2d ed. 1989). These definitions provide the understanding that a "mounting" is something serving as a backing or support, including a part on which a device rests while in service.

It is important to note, however, that an independent meaning of mounting is an "embellishment." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1478 (1993). An

---

[27]    Since the British English "mountings" is what originated in the HTS, reference to the Oxford English Dictionary is appropriate. *See, e.g., Victoria's Secret Direct, LLC v. United States*, 37 CIT 573, 585-86, 908 F. Supp. 2d 1332, 1345 (2013).

"embellishment" is "[t]hat which embellishes or beautifies, . . . an ornament, decoration, [a] setting off." 5 OXFORD ENGLISH DICTIONARY 161 (2d ed. 1989).[28]

Examination of the submitted photographs depicting the articles installed within automobiles and samples of the Category 1 (interior trim) articles, together with an examination of the sample articles themselves, leads to the conclusion that they are indeed fittings and/or mountings in accordance with the above meanings of the terms, though they are primarily fittings.

The Category 1 (interior trim) articles are fittings within the meaning of "fittings" in heading 8302 because they function to fit, join, adjust, or adapt other parts together, for example by filling in surface gaps and joining separate surfaces to eliminate rattle. They are also "fittings" because each chrome-plated plastic trim item of Category 1 (interior trim) is intended to "finish" an automobile from a visual aspect, i.e., a chrome-plated "luxury" accessory, adjunct, or attachment intended to make the vehicle interior more appealing. *See* Def.'s Br. at 24-26. The parties agree that "trim" is itself an industry term that is "common for either decoration or to fill gaps on interior panels In [sic] a vehicle," and that "chrome is thought of to give the appearance of a more high valued product," *see id.* at 25-26 (quoting Tubbs Dep. at 12:4-8, 44:13-19), which is consistent with the meaning of "fittings" as used in heading 8302. Because the Category 1 (interior trim) articles are fittings, they are described by heading 8302. Although Jing Mei argues that the Category 1 (interior trim) articles are not fittings because they are not like pipe fittings, it is apparent that the definition of the word is expansive enough to cover its imported articles. As to Jing Mei's claim that the Category 1 (interior trim) articles do not "fit" like a fitting, the examination of the samples of the articles and the parties' papers revealed the opposite. Too, an

---

[28]    Synonyms for "embellishment" include adornment, decoration, beautifier, garnish, and ornament. *See Embellishment*, MERRIAM-WEBSTER https://www.merriam-webster.com/dictionary/embellishment (last visited Feb. 26, 2024).

examination of the Category 1 (interior trim) articles confirms that they do indeed fill gaps although they provide no structural integrity to the body of the motor vehicle to which they are fitted.

To a lesser extent, the Category 1 (interior trim) articles also satisfy the heading 8302 description of "mountings," that serve as embellishments, because they function to provide chrome-plated "luxury" to a vehicle's interior cabin. They are not a "necessity," but (as possibly a subordinate function) they provide decoration and ornamentation—a chrome-plated "luxury" feel, intended to make the vehicle interior more appealing—and are therefore embellishments. Thus, Category 1 (interior trim) mountings are described by heading 8302 and likewise precluded from classification in heading 8708. The significance of the Category 1 (interior trim) articles being primarily described as fittings but to a lesser extent also mountings is that both terms are found in heading 8302, thus confirming that they are the kinds of articles the drafters intended to be covered there. *See Vecoplan, LLC v. United States*, No. 20-00126, 2023 WL 8572684 (CIT Dec. 11, 2023) (not reported in Federal Supplement).

As to Jing Mei's argument that Explanatory Note 83.02 and Customs' Informed Compliance Publication "limit" the terms "fittings" and "mountings" to those that are "accessories," the court is unconvinced that the argument supports Jing Mei's case. As Customs points out, the Federal Circuit, in *Container Store*, cited Explanatory Note 83.02 when concluding that heading 8302 "draws a sharp distinction between 'general purpose . . . *accessory* fittings and mountings,' which fall within the scope of heading 8302 and 'goods forming an *essential part* of the structure of [an] article,' which do not." *Container Store*, 864 F.3d at 1331 (emphasis added).[29]

---

[29]    *See also Peter J. Schweitzer, Inc. v. United States*, 16 Ct. Cust. 285, 292 (1928) ("[W]hether an article is an accessory or an integral part of a machine depends, to a considerable

Jing Mei argues that the "limitation" in heading 8302 that Customs acknowledged in its

Informed Compliance Publication, to the effect that articles of heading 8302 have a "secondary,

supplementary, or subordinate function," means that the Category 1 (interior trim) articles form an

"essential" part of a vehicle whose function is in no way "secondary" or "supplementary" or

"subordinate." *See* Pl.'s Br. at 26; Pl.'s Resp. at 13 ("[T]he vehicle may not be entered, operated,

or exited without functioning door handles."); *see generally id*. at 12-14. The Category 1 (interior

trim) articles, however, are accessories and are thus non-essential parts of vehicles. While they are

certainly useful, they are not essential. They are not a "necessity" for the motor vehicle's operation,

nor do they provide any structural integrity to it. Examination of the interior trim parts confirms

this conclusion, with the photographs and samples of the articles before the court acting as a

"potent witness" in that regard. *See Simod Am. Corp.*, 872 F.2d at 1578.

Finally, "parts of general use" provided for in section XVII's note 2(b) include "similar

goods of plastics" of chapter 39.

*Honda* instructs that on a claim for classification in chapter 87, a court must first determine

whether the article is precluded from classification thereunder because the article is a "part[] of

general use" under note 2 to section XV ("Base metals and articles of base metal"). *See Honda*,

607 F.3d at 773 ("[A]rticles that are 'parts of general use' . . . cannot be classified as 'parts' or

'parts and accessories' under Chapter 87."); *see also* Section XVII, Note 2, HTSUS. As instructed

by *Honda*, the court concludes that the Category 1 (interior trim) articles are precluded from

classification under heading 8708 by section XVII's note 2(b), because all of them would be

---

extent, upon its use. If its use is casual, auxiliary, or optional, it is an accessory. If, however, it is
used as an essential part, and if the machine is incapable of performing its ordinary and proper
functions without it, it will be considered, at least for tariff purposes, as an integral part of the
machine.").

classifiable as fittings under heading 8302, and most would be classifiable as mountings under that heading. The Category 1 (interior trim) articles are therefore "parts of general use" as described by note 2(c) to section XV (stating that "parts of general use" include "[a]rticles of heading . . . 8302"). The articles are thus precluded from classification under heading 8708.

Customs argues that the Category 1 (interior trim) articles are properly classifiable under heading 3926, subheading 3926.30 ("*Fittings* for . . . *coachwork* or the like"), because the Category 1 (interior trim) articles are "fittings" suitable for "coachwork." *See, e.g.*, Def.'s Br. at 25, 30. The court agrees.

Because the Category 1 interior trim parts are made up of molded plastic and are similar to fittings and (to a lesser extent) mountings as provided for in heading 8302, they are precluded from classification under heading 8708. Application of GRI 1 demonstrates that all the Category 1 (interior trim) articles are described under chapter 39, heading 3926, which covers "Other articles of plastics." Moreover, application of GRI 6 demonstrates that the Category 1 (interior trim) articles are best described under subheading 3926.30.50, which covers "Fittings for furniture, coachwork or the like . . . Other."

As discussed above, these articles are "fittings" for "coachwork" as described by the six-digit subheading 3926.30 because they function to fit, join, adjust, or adapt other automobile parts together—for example, by filling in surface gaps and joining separate surfaces to eliminate rattle—and are intended to "finish" an automobile from a visual aspect, i.e., a chrome-plated "luxury" accessory, adjunct, or attachment intended to make the vehicle interior more appealing. Finally, these Category 1 (interior trim) articles fall within the eight-digit basket subheading 3926.30.50 ("Other") for "Fittings for . . . coachwork" because they are not specifically described by the other eight-digit subheading found under six-digit subheading 3926.30 (e.g., "Handles and knobs").

Accordingly, the Category 1 (interior trim) articles are "similar goods of plastics" under chapter 39 as "fittings" of heading 8302 and are properly classified under HTSUS subheading 3926.30.50. *See* Section XVII, Note 2(b), HTSUS.

## II.    Category 2 (Door Handles and Door Handle Parts) Articles

The Category 2 (door handles and door handle parts) articles consist of thirteen items of automotive "door handles" or "door handle parts" that serve, or work together with other parts, as the door opening, closing, and latching devices for specific makes and models of motor vehicles.[30]

---

[30]    P415 handle LH, P415 handle RH, DS IS handle-LH, DS IS handle-RH, CD334/8 handle LH, and CD334/8 handle RH are "chrome-plated plastic lever handles" that are "one of a number of parts forming an interior door handle assembly for the interior doors of specific motor vehicles" that also "provide a decorative component for the cabin interior." Def.'s Br. at 5; *see also* Def.'s SOF ¶¶ 16-21.

GMT900 handle ASM-chrome-LH and GMT900 ASM-chrome-RH are "chrome-plated plastic lever handles" that are "one of a number of parts forming an exterior door handle assembly for the exterior doors of specific motor vehicles." Def.'s Br. at 5; *see also* Def.'s SOF ¶¶ 22-23. "When combined with other parts," these handles "form a complete door handle assembly which works to open and close vehicle doors." Def.'s Br. at 5; *see also* Def.'s SOF ¶¶ 22-23. These parts also "provide[] a decorative component for the motor vehicle exterior." Def.'s Br. at 5; *see also* Def.'s SOF ¶¶ 22-23.

GMT900 chassis-LH-RR chrome, GMT900 chassis-RH chrome without key, and GMT900 chassis-LHF chrome with key are "chrome-plated plastic exterior mountings for the exterior door of motor vehicles" and are "one part of the exterior door handle assembly." Def.'s Br. at 5; *see also* Def.'s SOF ¶¶ 24-26. "They are the exterior base structure into which the lever handles fit. When the exterior lever and base mounting are combined, [along with other parts], the whole door handle assembly works to open and close vehicle doors." Def.'s Br. at 5-6; *see also* Def.'s SOF ¶¶ 24-26. These parts also "provide a decorative component for the motor vehicle exterior." Def.'s Br. at 6; *see also* Def.'s SOF ¶¶ 24-26.

CD334/8 lock knob cover RH and CD334/8 lock knob cover LH are "chrome-plate[d] plastic locking lever covers [that] are incorporated into the interior door handle assembly." Def.'s Br. at 6; *see also* Def.'s SOF ¶¶ 27-28. "When installed and connected with other parts, [they] aid in locking the door." Def.'s Br. at 6; *see also* Def.'s SOF ¶¶ 27-28. These parts also "provide a decorative component." Def.'s Br. at 6; *see also* Def.'s SOF ¶¶ 27-28.

Def.'s SOF ¶¶ 16-28. All the Category 2 (door handle and door handle parts) articles, in one way or another, are designed to form part of the larger door mechanism that works to open and close access to a vehicle. *See id.* Certain of these articles, when combined with other parts, aid in locking and unlocking the vehicle door. *See id.* ¶¶ 27-28. In addition, all the Category 2 articles provide a decorative component (i.e., the chrome-plated luxury look). *See id.* ¶¶ 16-28.

Customs classified the Category 2 (door handles and door handle parts) articles under subheading 3926.30.10, HTSUS, which provides for "Other articles of plastics and articles of other materials of headings 3901 to 3914[31] . . . Fittings for furniture, coachwork or the like . . . Handles and knobs." Because, like the Category 1 (interior trim) articles, Customs found the Category 2 (door handles and door handle parts) articles to be "parts of general use," Customs determined that they too were excluded from classification under Jing Mei's preferred heading 8708 ("Parts and accessories of . . . motor vehicles") by the application of section XVII's note 2(b).

As with the Category 1 (interior trim) articles, Jing Mei argues that the Category 2 (door handles and door handle parts) articles should be classified in chapter 87 under heading 8708, subheading 8708.99.81 ("Parts and accessories of . . . motor vehicles . . . Other . . . Other"). Pl.'s Br. at 35 ("[T]he subject articles are not general use handles and are properly classified under HTSUS 8708.99.8180.").

The analysis for the Category 2 (door handles and door handle parts) articles is analogous to that of the above Category 1 (interior trim) articles. That is, whether the Category 2 (door handles and door handle parts) articles are classifiable under heading 8708 or Customs' preferred

---

[31]    Chapter 39's note 1 describes headings 3901 to 3914 plastics as covering "those materials . . . which are or have been capable, either at the moment of polymerization or at some subsequent stage, of being formed under external influence (usually heat and pressure, if necessary with a solvent or plasticizer) by molding, casting, extruding, rolling or other process into shapes which are retained on the removal of the external influence."

heading 3926 depends on whether the articles are "[p]arts and accessories of . . . motor vehicles"

or are "parts of general use" provided by note 2(b) to section XVII ("Vehicles, aircraft, vessels

and associated transport equipment") and note 2(c) to section XV ("Base metals and articles of

base metal"). As with the Category 1 (interior trim) articles, they are "parts of general use" if they

are "similar goods of plastics" to the "[b]ase metal mountings, fittings and similar articles suitable

for . . . coachwork" described in heading 8302. *See* Section XVII, Note 2(b), HTSUS; Section XV,

Note 2(c), HTSUS.

Both parties rely on the first paragraph of Explanatory Note 83.02 to support their

respective arguments. Explanatory Note 83.02 provides in relevant part:

> [Heading 8302] covers general purpose classes of base metal *accessory fittings* and
> mountings, such as are used largely on furniture, doors, windows, *coachwork*, etc.
> Goods within such general classes remain in this heading even if they are designed
> for particular uses (e.g., *door handles* or hinges *for automobiles*). The heading **does
> not**, however, **extend** to goods forming an essential part of the *structure* of the
> article, such as window frames or swivel devices for revolving chairs.

EXPLANATORY NOTES, Note 83.02; *see* Pl.'s Br. at 11; Def.'s Br. at 26.

For Customs, this paragraph of Explanatory Note 83.02 explicitly addresses "parts of

general use" (i.e., articles described in heading 8302) by explaining that "[g]oods within such

general classes [(i.e., parts with general uses)] remain in this heading *even if they are designed for*

*particular uses (**e.g. door handles** or hinges **for automobiles**)*." Def.'s Br. at 32-33 (quoting

Explanatory Note 83.02).

Such explicit identification in Explanatory Note 83.02, of "door handles . . . for

automobiles," confirms, for Customs, that the Category 2 (door handles and door handle parts)

articles are "parts of general use" precluded from classification in heading 8708 ("Parts and

accessories of . . . motor vehicles") by section XVII's note 2(b).

For its part, Jing Mei contends that Customs misinterprets Explanatory Note 83.02 to mean

that *all* types of handles on a door are "parts of general use" under heading 8302. Pl.'s Br. at 26-27.

In arguing for classification in heading 8708, Jing Mei points to the language of Explanatory Note

83.02(C). *See id.* at 11. Explanatory Note 83.02(C) describes heading 8302 as covering:

> (C) **Mountings, fittings and similar articles suitable for motor vehicles** (e.g.,
> motor cars, lorries or motor coaches), **not being** parts or accessories of **Section
> XVII**.[32] For example : made up ornamental beading strips; foot rests; *grip bars,
> rails and handles*; fittings for blinds (rods, brackets, fastening fittings, spring
> mechanisms, etc.); interior luggage racks; window opening mechanisms;
> specialised ash trays; tail-board fastening fittings.

EXPLANATORY NOTES, Note 83.02(C) (emphasis added). Jing Mei argues that Explanatory Note

83.02(C)'s explicit examples of "foot rests" and "grip bars, rails and handles" provide specific and

limiting language as to just what constitutes "general purpose" handles classifiable under heading

8302. Pl.'s Resp. Br. at 4-6. Jing Mei argues that only "general purpose" handles with many

general uses—such as interior "grip handles" that are typically used for holding or assisting the

entering or exiting of the vehicle or hanging items (e.g., dry cleaning), or handles that are attached

to the door and do not form an essential part of the structure of an article or a part of the door

opening, closing, and locking system—are thus considered "parts of general use" under heading

8302. *See* Pl.'s Br. at 30-31 ("They are general use handles, unlike the articles in this case. They

do not act as a lever to engage with the vehicle's opening, closing, or locking mechanisms."); Pl.'s

Resp. Br. at 5 ("Heading 8302 applies not to *all* fittings and mountings, not to all fittings and

mountings of motor cars, and not to all handles, but only to 'accessory' fittings and mountings

comprising a 'general purpose' class of article.").

In addition, Jing Mei cites the first paragraph of Explanatory Note 83.02 (the paragraph

---

32      Section XVII ("Vehicles, aircraft, vessels and associated transport equipment")
covers chapter 87 ("Vehicles other than railway or tramway rolling-stock, and parts and
accessories thereof"), within which is Jing Mei's preferred heading 8708.

relied upon by Customs) as providing that "goods forming an essential part of the structure" are not "parts of general use." Pl.'s Br. at 27.

By comparison, Jing Mei contends the Category 2 (door handles and door handle parts) articles: (1) are "designed for and suitable for use solely with specific makes and models of passenger cars and similar vehicles" and do not have many general uses; (2) are "essential for drivers and passengers to enter the vehicle to drive it and exit the vehicle safely[;]" and (3) are "integrated as a part of the door opening, closing, and locking system." *Id.* at 34. Jing Mei thus contends that the Category 2 (door handles and door handle parts) articles are not "general purpose handles" because they are designed for specific automobiles, have a singular purpose, and form an essential part of the structure of the automobile: they "act as a lever to engage with the vehicle's opening, closing, or locking mechanisms." *Id.* at 31.

The court finds Jing Mei's analysis wanting. First, as an initial matter the Federal Circuit has addressed the argument that articles are designed for specific makes and models of automobiles. *See Honda*, 607 F.3d at 774 ("[A]n article's specialization for vehicles does not preclude its classification as a part of general use."). In addition, Jing Mei's argument avoids explicit discussion of the statement in Explanatory Note 83.02 that "[g]oods within such general classes remain in this heading [8302 ("Base metal mountings, fittings and similar articles . . .")] *even if they are designed for particular uses (e.g., door handles or hinges for automobiles*)." *See* EXPLANATORY NOTES, Note 83.02 (emphasis added).[33] Although Explanatory Note 83.02(C) references "*grip*" handles as one example of articles that constitute "mountings, fittings and similar articles suitable for motor vehicles" (as stated in subheading 8302.30), they are not the only type of handle referenced. The first

---

[33]        *See also, e.g., Honda*, 607 F.3d at 774 ("[A]n article's specialization for vehicles does not preclude its classification as a part of general use.").

paragraph of Explanatory Note 83.02 specifies "*door* handles" (and specifically those "for automobiles") as articles that are to be classified under heading 8302 and are thus "parts of general use." This reference demonstrates that more kinds of handles are "general purpose" handles that are properly classifiable as fittings and/or mountings under heading 8302 ("Base metal mountings, fittings and similar articles . . .") than Jing Mei believes. The specific reference to "door handles . . . for automobiles" in the first paragraph of Explanatory Note 83.02 confirms the conclusion that the Category 2 (door handles and door handle parts) articles are described by heading 8302.

This is the case despite Jing Mei's argument that the Category 2 (door handles and door handle parts) articles are "notably distinct" because "[t]hey are integrated as a part of the door opening, closing, and locking system, which would not function without [the] proper function of the subject Category 2 handles." Pl.'s Resp. at 8-9. In other words, Jing Mei argues that the Category 2 (door handles and door handle parts) articles are essential to a vehicle's structure and its operation. Because they are "essential," for Jing Mei, they may not be "parts of general use" of heading 8302 by operation of the first paragraph of Explanatory Note 83.02.

Jing Mei is right that one way for base metal "fittings and similar articles suitable for . . . coachwork" to avoid classification under heading 8302 ("Base metal mountings, fittings and similar articles . . .") is for them to form "an *essential* part of the *structure* of the article"—much like the *essential* part of a *structure* provided by "window frames or swivel devices for revolving chairs." EXPLANATORY NOTES, Note 83.02 (emphasis added). That is, to avoid being considered "parts of general use" under heading 8302 (and therefore, classifiable under Customs' preferred chapter 39, heading 3926), Jing Mei must show that the Category 2 (door handles and door handle parts) articles are an essential part of the *structure* of the automobile.

Jing Mei cannot do this.

The Federal Circuit has observed that Explanatory Note 83.02 "draws a sharp distinction between 'general purpose . . . accessory fittings and mountings,' which fall within the scope of heading 8302 [("Base metal mountings, fittings and similar articles . . .")] and 'goods forming an essential part of the structure of [an] article,' which do not." *Container Store*, 864 F.3d at 1331. "While a hinge or a knob may be essential to the *operation* of a door, they are not essential parts of the *structure* of the door itself. Items such as hinges and knobs are attached to, or placed on, a door." *Id.* at 1332 (emphasis added).

The *Container Store* Court's holding is instructive here. While the Category 2 (door handles and door handle parts) articles may be essential to the operation of the doors to which they are fitted or mounted, they are not essential to the *structure* of the doors to which they are fitted or mounted. Nor does it matter that the Category 2 (door handles and door handle parts) articles' manufacture is "tightly controlled and subject to stringent safety testing." Pl.'s SOF ¶ 19. This tight control does not mean that the articles are essential to the structure of the doors to which they are fitted or mounted.

That court concludes that, as with the Category 1 (interior trim) articles, the Category 2 (door handles and door handle parts) articles are not classifiable as parts of motor vehicles under heading 8708 ("Parts and accessories of . . . motor vehicles") by operation of section XVII's note 2(b) and note 2(c) to section XV ("Base metals and articles of base metal") (defining as "parts of general use" the base metal articles "of heading . . . 8302"). This leads to the conclusion that the Category 2 (door handles and door handle parts) articles, for purposes of classification, are articles of plastics similar to the fittings and mountings of HTSUS heading 8302. They are therefore parts of general use and excluded from classification under Jing Mei's preferred heading 8708 ("Parts and accessories of . . . motor vehicles").

Because the Category 2 door handle parts are made of plastic and are similar to fittings of heading 8302, they are properly classified under the provision of chapter 39 in which they are best described. Application of GRI 1 shows that the Category 2 (door handles and door handle parts) articles are described under chapter 39, heading 3926, which covers "Other articles of plastics." This is because these articles are articles of plastic that are not specifically provided for elsewhere in the other headings under chapter 39. The Category 2 (door handles and door handle parts) articles are also best described under eight-digit subheading 3926.30.10, which covers "Fittings for . . . coachwork . . . Handles and knobs." Accordingly, the Category 2 (door handles and door handle parts) articles are properly classified under HTSUS subheading 3926.30.10.

### III.    Category 3 (Exterior Trim) Articles

The Category 3 (exterior trim) articles consist of a single exterior trim part, which is a decorative grill (or grille) surround used to finish the exterior appearance of the vehicle's front end.[34] Def.'s SOF ¶ 15; Pl.'s Resp. SOF ¶ 15. Customs classified the Category 3 (exterior trim) articles under heading 3923, subheading 3923.30.50 as a plastic fitting for coachwork. *See* Def.'s Br. at 31.

The analysis for the Category 3 (exterior trim) articles follows the analysis for the Category 1 (interior trim) articles and Category 2 (door handles and door handle parts) articles, above. Jing Mei's statement of uncontested facts states that the grill surround "functions to filter air into the engine for cooling and is part of the vehicle's safety within the 'crumple zone,'" Pl.'s SOF ¶ 23, but these observations do not result in the grill surround being anything other than a fixture or mounting (or

---

[34]    Surround FR grille is an exterior trim part consisting of a chrome-plated plastic decorative border or "surround" trim which finishes the exterior appearance of the vehicle's front end by "fill[ing] in the surface gaps and join[ing] the separate surfaces between the grill and the surface of the front end." Def.'s SOF ¶ 15; Pl.'s Resp. SOF ¶ 15.

"similar article[]") within the meaning of heading 8302 and are thus precluded from classification in chapter 87 by means of section XVII's note 2(b).

Indeed, the Category 3 (exterior trim) articles are fittings because they "1) fill in the surface gaps and join the separate surfaces between the grill and the surface of the front end and 2) impart a decorative chrome appearance for the front end." Def.'s SOF ¶ 15; Pl.'s Resp. SOF ¶ 15. They are also accessory decorative "beading strips" that serve to "fit" up the body of an automobile.[35] *See* Explanatory Note 83.02. Like the Category 1 (interior trim) and Category 2 (door handles and door handle parts) articles, they provide no structural integrity to the vehicle itself. They are not necessary to the operation of the vehicle, and they do not actually "filter" air moving towards the engine (they are not, themselves, engine "air filters" in the commonly understood sense of those articles). The grill fills gaps and provides a decorative look to the vehicle. *Id.* Accordingly, for the same reasons provided in Section I above, the Category 3 (exterior trim) articles are likewise not classifiable as parts of motor vehicles under 8708 ("Parts and accessories of . . . motor vehicles"). This is because they are fittings and/or mountings within the meaning of heading 8302 and are therefore excluded from classification under heading 8708.

Instead, the Category 3 (exterior trim) articles are properly classified under heading 3926, subheading 3926.30.50 as "Other articles of plastics . . . Fittings for . . . coachwork . . . Other" and are not classifiable elsewhere in the HTSUS.

---

[35]    In British English, on which the HTS is modeled, *see* n.27, a "beading" is typically "a narrow strip of some material used for edging or ornamentation." *Beading*, COLLINS DICTIONARY, https://www.collinsdictionary.com/dictionary/english/beading (last visited Feb. 26, 2023); *see also* 2 OXFORD ENGLISH DICTIONARY 12 (2d ed. 1989) ("A bead moulding or edge line. *spec.* in *Arch[itecture]* and *Joinery*, a bead."). Here, the grills are similar to such molding strips of wood, although they are made of plastic.

## IV.    Category 5 (Axle Covers) Articles

### A.    The Axle Covers Are Properly Classified Under HTSUS Heading 8708 Pursuant to GRI 1

The remaining disputed articles are the Category 5 (axle covers) articles.[36] *See* Am. Compl. ¶¶ 10, 16. The Category 5 (axle covers) articles function to (1) "cover the ends of the axles on heavy-duty 18-wheeler-type trucks, preventing road debris and water from getting into the axle," and (2) "impart a decorative appearance." Def.'s SOF ¶ 33.

Customs, at entry, classified the Category 5 (axle covers) articles under HTSUS chapter 39, heading 3923, as "[a]rticles for the conveyance or packing of goods, of plastics; stoppers, lids, caps and other closures, of plastics." *See* Pl.'s Br. at 4. Specifically, Customs used subheading 3923.50.00, which covers "[s]toppers, lids, caps and other closures." *See id.*

Jing Mei argues that the Category 5 (axle covers) articles should be classified under HTSUS chapter 87, heading 8708, which covers "[p]arts and accessories of . . . motor vehicles." *See* Pl.'s Resp. at 20. Jing Mei further maintains that subheading 8708.70.60.45 covers the articles as "[w]heel covers and hubcaps for vehicles." *See id.* ("HTSUS 8708.70.6045 provides *eo nomine* for 'wheel covers and hubcaps' and is the proper HTSUS classification for the subject Rear Drive Axle Cover of Category 5.").

The legal analysis of Category 5 (axle covers) articles differs from the items discussed previously, mainly because the subject axle covers fit on the axle end and not on the body of the vehicle. *See* Def's Br. at 40; Def.'s SOF ¶ 33. That being the case, the covers are not "fittings" or "mountings" of *coachwork* covered by heading 8302, nor do they fall within any other "parts of general use" headings set forth in note 2 of section XV. *See* Pl.'s Resp. at 19; Def's Br. at 40.

---

[36]    The parties submitted a joint stipulation dismissing Jing Mei's claims as to the Category 4 (mirror scalps) articles and Category 5 (emblems) articles. *See* Joint Stipulation.

Therefore, because the Category 5 (axle covers) articles are not "parts of general use," they are not excluded from classification under heading 8708 pursuant to section XVII's note 2(b).

Customs claims that Rule 1(c) of the Additional U.S. Rules of Interpretation ("ARI") is significant here. *See* Def.'s Br. at 40-41; *see also* ARI 1(c), HTSUS. ARI 1(c) states: "in the absence of special language or context which otherwise requires . . . a provision for parts of an article covers products solely or principally used as part of such articles[,] but a provision for 'parts' or 'parts and accessories' shall not prevail over a specific provision for such part or accessory." ARI 1(c), HTSUS. Customs claims that the Category 5 (axle covers) articles are specifically provided for under subheading 3923.50.00 ("Articles for the conveyance or packing of goods, of plastics; stoppers, lids, caps and other closures, of plastics . . . Stoppers, lids, caps and other closures") because they "function[] as a cover, lid or closure for the end of the axle, and [are] made of plastic." Def.'s Br. at 41. Thus, for Customs, ARI 1(c) precludes classification under Jing Mei's preferred subheading 8708.70.60.45 ("Parts and accessories of . . . motor vehicles . . . Wheel covers and hubcaps for vehicles") because, as a provision for "parts and accessories," Jing Mei's subheading 8708.70.60.45 "shall not prevail over a specific provision for such part or accessory," which Customs claims subheading 3923.50.00 ("Articles for the conveyance or packing of goods, of plastics . . . Stoppers, lids, caps and other closures, of plastics") to be. ARI 1(c), HTSUS; *see* Def.'s Br. at 14. For the following reasons, Customs' argument fails.

As noted above, a classification analysis begins with GRI 1, which provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes." *R.T. Foods, Inc. v. United States*, 757 F.3d 1349, 1353 (Fed. Cir. 2014) (emphasis omitted) (first quoting GRI 1, HTSUS; and then citing *Orlando Food Corp.*, 140 F.3d at 1440 ("[A] court first construes the language of the heading, and any section or chapter notes in

question, to determine whether the product at issue is classifiable under the heading.")). "Pursuant to GRI 1, the possible headings are to be evaluated without reference to their subheadings, which cannot be used to expand the scope of their respective headings." *Id.* (citing *Orlando Food Corp.*, 140 F.3d at 1440 ("Only after determining that a product is classifiable under the heading should the court look to the subheadings to find the correct classification for the merchandise. . . . [W]hen determining which heading is . . . more appropriate for classification, a court should compare only the language of the headings and not the language of the subheadings.")). Therefore, the court must first evaluate the parties' competing tariff provisions at the heading level, without reference to their subheadings.

Here, Customs' preferred heading 3923 ("Articles for the conveyance or packing of goods, of plastics; stoppers, lids, caps and other closures, of plastics") appears, at first, to cover two distinct classes of merchandise. *See In Zone Brands, Inc. v. United States*, 44 CIT __, __, 456 F. Supp. 3d 1309, 1322 (2020) (citation omitted) ("As the court has recognized, the use of a semicolon results in 'distinct categories of merchandise.'"). The first class is "[a]rticles for the conveyance or packing of goods, of plastics." The second class is "stoppers, lids, caps and other closures, of plastics." Customs argues that the axle covers fall within the second class because they "function[] as a cover, lid or closure for the end of the axle, and [are] made of plastic." Def.'s Br. at 41.

The latter clause under heading 3923, "stoppers, lids, caps and other closures, of plastics," is an *eo nomine* provision[37] as it describes merchandise by name rather than use. *See In Zone*

---

[37]        An *eo nomine* tariff provision "is one which describes a commodity by a specific name, rather than by use, and absent limitation or contrary legislative intent . . . includes all forms of the named article, even improved forms." *Well Luck Co. v. United States*, 887 F.3d 1106, 1111 n.4 (Fed. Cir. 2018) (cleaned up).

*Brands*, 44 CIT at __, 456 F. Supp. 3d at 1322 ("[T]he latter clause in Heading 3923, 'stoppers, lids, caps and other closures, of plastics,' is an <u>eo nomine</u> provision as it describes merchandise by name rather than use."). The terms stoppers, lids, and caps are not defined by the tariff itself. Thus, the court will look to the common meaning of the terms for guidance. *See Baxter Healthcare Corp. of P.R. v. United States*, 182 F.3d 1333, 1337-38 (Fed. Cir. 1999).

"Stopper" is defined as "an object that fits into the top of a bottle or other container." *Stopper*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/stopper (last visited Feb. 26, 2024). "Lid" is defined as "a cover on a container, that can be lifted up or removed." *Lid*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/lid (last visited Feb. 26, 2024). "Cap" is defined as "a small lid or cover." *Cap*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/cap (last visited Feb. 26, 2024).

As an initial matter, it is important to keep in mind the kind of articles this clause of heading 3923 is intended to encompass. The nature of the other terms of the heading (those on the right side of the semicolon) is useful in making that decision. In that regard, the scope of each of the terms "stoppers," "lids," and "caps" is unclear. For instance, the word "caps" encompasses multiple meanings (think baseball caps worn as headgear and caps for cap guns). To determine the kinds of "caps" as well as "stoppers" and "lids" that are covered by heading 3923, the court will apply *noscitur a sociis*, "[a] canon of construction holding that the meaning of an unclear word or phrase, esp[ecially] one in a list, should be determined by the words immediately surrounding it." *Noscitur a sociis*, Black's Law Dictionary (11th ed. 2019). In accordance with the canon *noscitur a sociis*, "[i]n order to ascertain the meaning of any word or phrase that is ambiguous or susceptible to more than one meaning, the court may properly resort to the other words with which

the ambiguous word is associated in the statute." *Jewelpak Corp. v. United States*, 24 CIT 249, 253, 97 F. Supp. 2d 1192, 1196 (2000) (citation omitted). The application of this rule of construction convinces the court that this heading does not provide for the classification of, for instance, baseball "caps" or caps for cap guns. Indeed, each of the terms (i.e., stoppers, lids, caps, and other closures) serves to contextualize each other term and helps to give each other meaning. Thus, here, the terms "stoppers," "lids," "caps," and "other closures, of plastics," are confined to "closures," as is demonstrated by their context in a list that includes "stoppers" and "lids" and "caps." Moreover, as noted, the dictionary definitions for these closures define each as a closure for containers.

The Explanatory Note to heading 3923 confirms this idea. The note states that "[t]his heading covers all articles of plastics commonly used for the packing or conveyance of all kinds of products."[38] Explanatory Notes, Note 39.23. This note is applicable to all of heading 3923. That is, it applies to the terms on both sides of the semicolon. Thus, while it would ordinarily be thought that the articles on either side of the semicolon in heading 3923 are distinct from one another, the Explanatory Note provides that the words "for the conveyance or packing of goods" apply to all of them. The Explanatory Note also provides a list of exemplars of articles included within the scope of heading 3923.[39] *Id.* None of the articles on the list are similar to the Category 5 (axle covers) articles.

---

[38]    While the Explanatory notes are not binding upon the court, they are intended to aid the court in interpreting the tariff provisions. *See ME Global, Inc. v. United States*, 47 CIT __, __, 633 F. Supp. 3d 1349, 1357 (2023).

[39]    The Explanatory Note States:

This heading covers all articles of plastics commonly used for the packing or conveyance of all kinds of products. The articles covered include:

The Explanatory Notes' drafter's inclusion of "use[] for the packing[, support,] or conveyance of all kinds of products," is a distinguishing characteristic of all articles classified under this heading, including the stoppers, lids, caps and other closures. Explanatory Note 39.23; *see, e.g.*, *S.C. Johnson & Son, Inc. v. United States*, 43 CIT, __, 415 F. Supp. 3d 1373 (2019) (holding that plastic Ziploc sandwich bags were properly classified under HTSUS heading 3923 because they were used to pack and transport goods like the other articles provided for under that heading), *aff'd*, 999 F.3d 1382 (Fed. Cir. 2021). Therefore, following the doctrine of *noscitur a sociis*, the context of heading 3923's second clause, read in and by itself and consistently with the Explanatory Note, leads to the conclusion that "stoppers," "lids," and "caps" are "closures" for use with some type of container or other similar article used for packing, supporting, or the conveyance of goods. While the axle covers function to keep debris and water from getting into the axle of a motor vehicle, they do not operate as a "closure" of an article that is "commonly used for packing

---

(a)   Containers such as boxes, cases, crates, sacks and bags (including cones and refuse sacks), casks, cans, carboys, bottles and flasks.

The heading also covers:

(i) Cups without handles having the character of containers used for the packing or conveyance of certain foodstuffs, whether or not they have a secondary use as tableware or toilet articles;

(ii) Bottle preforms of plastics being intermediate products having tubular shape, with one closed end and one open end threaded to secure a screw type closure, the portion below the threaded end being intended to be expanded to a desired size and shape.

(b)   Spools, cops, bobbins and similar supports, including video or audio cassettes without magnetic tape.

(c)   Stoppers, lids, caps and other closures.

Explanatory Notes, Note 39.23.

or conveyance" or "support" of another product. Thus, it follows that the axle covers are not "stoppers," "lids," or "caps" as described in heading 3923. Customs' argument that ARI 1(c) prevents the Category 5 (axle covers) articles from classification under heading 8708 because they are specifically provided for as stoppers, lids, or caps under heading 3923 cannot be credited.

A reading of various HTSUS headings, pursuant to GRI 1, shows that the Category 5 (axle covers) articles are properly classified under Jing Mei's preferred HTSUS heading 8708. Heading 8708 is an *eo nomine* provision that covers "[p]arts and accessories of . . . motor vehicles."

The Category 5 (axle covers) articles are "parts" of motor vehicles because they are a smaller component of the larger vehicle that attach to the end of the vehicle's axles, and function to keep road debris and water from getting into the axle, thus preventing corrosion. They also have the secondary function of adding to the aesthetic of a motor vehicle by imparting a decorative chrome appearance and are therefore accessories. In fact, Customs, in its brief, appears to concede that the Category 5 (axle covers) articles are "accessories" of a motor vehicle. *See* Def.'s Br. at 40 ("[T]he axle cover is a non-essential accessory component of a motor vehicle . . . .").

Accordingly, pursuant to GRI 1, the Category 5 (axle covers) articles are properly classified under HTSUS heading 8708 because they are described by the terms of heading 8708 ("Parts and accessories of . . . motor vehicles."). It is worth noting that this conclusion is consistent with Customs' own rulings classifying similar articles under HTSUS heading 8708. *See, e.g.*, NY I81035 (May 16, 2002), 2002 WL 1602792 (classifying, under HTSUS heading 8708, 5.5-inch and 6.5-inch round plastic automobile wheel caps, with a decorative function to identify the vehicle manufacturer and to add a touch of ornamentation to the wheels, as well as a practical utilitarian function to keep dirt and road debris out of the juncture of the wheel and wheel hub); NY 876908

(Aug. 8, 1992), 1992 WL 455360 (classifying, under HTSUS heading 8708, 13-inch, 14-inch, and 15-inch automobile wheel covers made of ABS plastic and painted with automotive grade paint).

**B.    The Axle Covers Are Properly Classified Under HTSUS Subheading 8708.70.60.45 Pursuant to GRI 6**

Having determined that the Category 5 (axle covers) articles are properly classified under HTSUS heading 8708, the court turns next to an analysis of the relevant subheadings. As noted, GRI 6 is employed to determine if Jing Mei's preferred HTSUS subheading 8708.70.60.45 ("Wheel covers and hubcaps for vehicles") is the correct tariff designation for the Category 5 (axle covers) articles or if some other subheading provides the proper classification. *See Well Luck Co.*, 887 F.3d at 1112. GRI 6 instructs that:

> For legal purposes, the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, *mutatis mutandis*, to the above rules, on the understanding that only subheadings at the same level are comparable. For the purposes of this rule, the relative section, chapter and subchapter notes also apply, unless the context otherwise requires.

GRI 6, HTSUS.

Jing Mei's subheading 8708.70.60.45 is an *eo nomine* provision that covers "[w]heel covers and hubcaps for vehicles." Because the terms "wheel covers" and "hubcaps" are not defined by the HTSUS, the court will construe these terms in accordance with their common and commercial meaning. *See Baxter Healthcare Corp.*, 182 F.3d at 1337-38. A "wheel cover" is defined as "a fancy cover for the wheels of motor vehicles: larger than a hubcap." *Wheel Cover*, Collins Dictionary, https://www.collinsdictionary.com/us/dictionary/english/wheel-cover (last visited Feb. 26, 2024). A "hubcap" is defined as "a removable cover for the center area of the exposed side of an automobile wheel, covering the axle." *Hubcap*, Collins Dictionary, https://www.collinsdictionary.com/us/dictionary/english/hubcap (last visited Feb. 26, 2024).

Here, the Category 5 (axle covers) articles possess the characteristics and functional attributes of the wheel covers and hubcaps found under subheading 8708.70.60.45 ("Wheel covers and hubcaps for vehicles"). That is, like the hubcaps, the axle covers, too, act as a cover for the ends of a motor vehicle's axles, which are located in the center area of the exposed side of a motor vehicle wheel. Although "axle covers" are not explicitly named under subheading 8708.70.60.45, they are clearly a form of a "hubcap," which is a named article under the subheading. To the extent that they "impart a decorative appearance," the Category 5 (axle covers) articles are also "wheel covers." Thus, the subject axle covers fall within the common meaning of the terms hubcaps and wheel covers. Therefore, because an *eo nomine* provision "includes all forms of the named article," *Well Luck Co.*, 887 F.3d at 1111 n.4, the Category 5 (axle covers) articles, as a form of hubcap or wheel cover (i.e., the named articles), are properly classified under subheading 8708.70.60.45 ("Wheel covers and hubcaps for vehicles").

## CONCLUSION

In view of the foregoing, the court finds that the Category 1 (interior trim) articles and the Category 3 (exterior trim) articles are properly classified under HTSUS subheading 3926.30.50 ("Fittings for . . . coachwork . . . Other"); the Category 2 (door handles and door handle parts) articles are properly classified under HTSUS subheading 3926.30.10 ("Fittings for . . . coachwork . . . Handles and knobs"); and Category 5 (axle covers) articles are properly classified under HTSUS subheading 8708.70.60.45 ("Wheel covers and hubcaps for vehicles"). Judgment will be entered accordingly.

Dated:      February 26, 2024                              _____/s/ Richard K. Eaton_____
            New York, New York                                           Judge